## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KATHLEEN BROWN, individually and on behalf of others similarly situated, | CIVIL ACTION NO. |
| Plaintiff, | CLASS ACTION |
| v. | |
| EXPEDIA, INC., HOTELS.COM LP; TRAVELOCITY.COM LP, SABRE HOLDINGS CORPORATION, PRICELINE.COM INCORPORATED, BOOKING.COM B.V., BOOKING.COM (USA), INC., ORBITZ WORLDWIDE, INC., HILTON WORLDWIDE INC., STARWOOD HOTELS & RESORTS WORLDWIDE, INC., MARRIOTT INTERNATIONAL, INC., TRUMP INTERNATIONAL HOTELS MANAGEMENT, LLC, KIMPTON HOTEL & RESTAURANT GROUP, LLC, INTERCONTINENTAL HOTELS GROUP RESOURCES, INC., and JOHN DOES 1-100, | JURY TRIAL DEMANDED |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiff, Kathleen Brown, by and through her attorneys, on behalf of herself and all others similarly situated, brings this Class Action Complaint against Expedia, Inc. ("Expedia"), Hotels.com LP ("Hotels. com"), Travelocity.com LP ("Travelocity"), Sabre Holdings Corporation ("Sabre Holdings"), Booking.com B.V., Booking.com (USA), Inc. (Booking.com B.V. and Booking.com (USA), Inc. will be referred to as "Booking.com"), Priceline.com, Inc.  ("Priceline"), and Orbitz Worldwide, Inc. ("Orbitz") (collectively, the "Online Travel Company" ("OTC") Defendants"), and Hilton Worldwide,. Inc. ("Hilton");

Marriott International, Inc. ("Marriott"); Trump International Hotels Management, LLC ("Trump"); InterContinental Hotels Group Resources Inc. ("InterContinental"), Starwood Hotels & Resorts Worldwide, Inc. ("Starwood"), and Kimpton Hotel & Restaurant Group, LLC ("Kimpton") (collectively, the "Hotel Defendants") and alleges, based upon personal knowledge as to herself and her own acts, and as to all other matters upon information and belief, as follows:

## I.    NATURE OF ACTION

1.      Plaintiff purchased online hotel room reservations ("Room Reservations") directly from one or more of the OTC Defendants in the United States and stayed at one or more of the Hotel Defendants based on these same purchases.  Plaintiff brings this direct purchaser antitrust action to challenge the OTC Defendants' conspiracy with the Hotel Defendants to enter into, maintain and/or enforce minimum resale price maintenance ("RPM") agreements and also to challenge the *per se* horizontal conspiracy entered into by the OTC Defendants.  Plaintiff seeks damages and equitable relief from Defendants under Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, and under California Business & Professions Code §§ 16720, et seq.

2.      The OTC Defendants are among the dominant online travel companies that act as retailers for Room Reservations in the United States and California.  Here, the OTC Defendants conspired with the Hotel Defendants and agreed to impose an RPM scheme that would fix the retail price for Room Reservations and maintain "Rate Parity" on the rate of the room itself at the price the Hotel Defendants were selling the Room Reservation ("Rack Rates") and restrain competition for Room Reservations ("OTC-Hotel Agreements") in the market for online hotel reservations. The OTC  - Hotel Agreements included express terms to

set, maintain, and enforce minimum Room Reservation prices at the Rack Rates.  The OTC -

Hotel Agreements restrained price competition by requiring the Hotel Defendants to impose,

amend, enforce, and/or heighten enforcement of minimum resale price maintenance

agreements with respect to price-cutting OTC's, and/or to prevent OTC's from discounting

Room Reservations below the Rack Rates.

3.      Pursuant to the OTC-Hotel Agreements, the Hotel Defendants were charged

with enforcing the RPM scheme against OTC's that attempted to charge lower than the Rack

Rates. The OTC-Hotel Agreements were part of an anti-competitive scheme under which the

OTC Defendants leveraged their substantial market power and dominance to induce the

Hotel Defendants into agreeing to do one or more of the following: (a) impose minimum

resale price maintenance agreements on the OTC's; (b) enforce the OTC-Hotel Agreements

as to the OTC's; and/or (c) refuse to supply or cut off the supply of rooms to price-cutting

competing OTC's.

4.      As a result of the concerted RPM scheme entered into by the OTC and Hotel

Defendants, Room Reservations will not be sold to Plaintiff and members of the Class for

less than the Rack Rate.  Because all of the OTC Defendants have the same clause in most or

all of their contracts, whether oral or written, none of the OTC Defendants compete with any

of the other OTC Defendants on price, and the retail rates for Room Reservations are set at

Rack Rates and thus are virtually identical amongst the OTC Defendants and with each Hotel

Defendant the OTC Defendants contract with.

5.      Rate Parity dates back nearly ten years, according to Hotel Marketing.com, a

trade website.  Prices set by the OTC and Hotel Defendants at the Rack Rate has been

admitted to be "… a standard industry practice" by Nancy St. Pierre, spokesperson for Sabre

Holdings, the operator of Travelocity.com.[1] Kimberly Hutcherson, director of sales for a

Hampton Inn (a Hilton brand) in the Dallas area is a believer in Rate Parity because it

"leaves the brand [the Hotel] with the control of the rate.[2]

6. The Hotel Defendants enforce Rate Parity because otherwise the OTC

Defendants would drop them lower in the search results on their online sites ("Back-End

Placement") which means a significant loss of revenue for the Hotel Defendant since the

OTC Defendants control at least 40 percent of the Hotel Defendants' bookings.[3]

7. The Rack Rate is a price-fixed and uniform rate charged by the OTC

Defendants with each Hotel Defendant Agreement. Any "best price "guarantees offered by

the OTC Defendants are a sham because they know all prices offered for any particular Hotel

Defendant will be the same price whether offered by the Hotel Defendant or any of the OTC

Defendants.

8. Absent Defendants' anti-competitive and deceptive conduct, Plaintiff and the

other Class members would have paid less for each of the Room Reservations purchased

during the Class Period. The direct consequence of Defendants' unlawful conduct was that

Plaintiff and other Class members were overcharged on their purchases of Room

Reservations throughout the Class Period. Plaintiff thus seeks damages and equitable relief

under Sections 4 and 16 of the Clayton Act, 15 U.S.C. § § 15(a) and 26, for violations of

Section I of the Sherman Antitrust Act, 15 U.S.C. § 1, and for violation of Cal. Bus. & Prof.

---

[1] Karin Robinson-Jacobs, "Practice that holds rates steady among Hotel Defendants, travel sites coming under fire," Dallas Morning News (Nov. 16, 2010), reprinted at http://hsmaidfw.blogspot.com/ (last accessed September 11, 2012).

[2] *Id.*

[3] *Id.*

Code § 17500 et seq.  In addition, a subclass of California residents who purchased Room Reservations brings a claim for violations of California Business & Professions Code Sections 16720, et seq.

## II.    PARTIES

### A.    Plaintiff

9.    Kathleen Brown is a resident and citizen of Pennsylvania who made at least one direct purchase from an OTC Defendant for a stay at a Hotel Defendant in California and has been damaged as a result of the conduct alleged.

### B.    Defendants

10.    Defendant Expedia, Inc. is a Delaware corporation with its principal place of 333  108th Avenue NE, Bellevue, Washington 98004.

11.    Defendant Hotels.com LP is an affiliate of Expedia. Hotels.com LP is a Texas limited partnership with its headquarters located at 10440 North Central Expressway, Suite 400, Dallas, Texas 75231.

12.    Defendant Travelocity.com LP is a Delaware limited partnership with its principal place of business located at 3150 Sabre Drive, Southlake, Texas 76092. Travelocity is owned by Defendant Sabre.

13.    Defendant Booking.com B.V. is a company based in Amsterdam, the Netherlands, with its principal place of business at Herengracht 597, 1017 CE, Amsterdam, Netherlands. Booking.com B.V. owns and operates Booking.com, the leading worldwide online Room Reservations agency by room nights sold, attracting over 30 million unique visitors each month via the Internet from both leisure and business markets worldwide. Booking.com B.V. is a wholly owned subsidiary of Priceline.com Incorporated.

14.    Defendant Booking.com (USA), Inc. is a Delaware corporation with its primary place of business located at 100 William Street, Suite 750, New York, New York 10038. Booking.com (USA), Inc. is a wholly owned subsidiary of Priceline.com Incorporated.

15.    Defendant Priceline.com Incorporated is a Delaware corporation with its primary place of business located at 800 Connecticut Avenue, Norwalk, Connecticut 06854.

16.    Defendant Orbitz Worldwide, Inc. is a Delaware corporation and its corporate headquarters are located at 500 W. Madison Street, Suite 1000, Chicago, Illinois 60661.

17.    Defendant Sabre Holding Corporation, incorporated in Delaware, is headquartered at 3150 Sabre Drive, Southlake, Texas 76092.

18.    Defendant Intercontinental Hotels Group Resources, Inc. is a Delaware corporation with its primary place of business located at 3 Ravinia Drive, Suite 100, Atlanta, Georgia 30346-2149.

19.    Defendant Starwood Hotels & Resorts Worldwide, Inc. is a Maryland corporation with its principal place of business at One StarPoint, Stamford, Connecticut 06902. Starwood's hotels are primarily operated under the brand names St. Regis®, The Luxury Collection®, Sheraton®, Westin®, W®, Le Meridien®, Four Points® by Sheraton, Aloft® and Element®.

20.    Defendant Marriott International, Inc. is a Delaware corporation with its principal place of business at 10400 Fernwood Road, Bethesda, Maryland 20817-1102.

21.    Defendant Trump International Hotels Management, LLC, doing business as The Trump Hotel Collection, is a Delaware limited liability company headquartered at 725 Fifth Avenue, New York, New York 10022.

22.    Defendant Hilton Worldwide, Inc. is a Delaware company doing business as Hilton Hotels & Resorts with its primary place of business located at 7930 Jones Branch Drive, McLean, Virginia 22102.

23.    Defendant Kimpton Hotel & Restaurant Group, LLC is a Delaware limited liability company with its principal place of business located at 222 Kearny Street, Suite 200, San Francisco, CA 94108.

### III.    AGENTS AND CO-CONSPIRATORS

24.    Various other persons, firms and corporations, not named herein as Defendants have participated as co-conspirators with the Defendants and have performed acts and made statements in furtherance of the conspiracy. Some of these firms are as yet unidentified.  The acts alleged against the Defendants in this Complaint were authorized, ordered, or done by their officers, agents, employees, or representatives, while actively engaged in the management and operation of Defendants' businesses or affairs.

25.    Each Defendant acted as the principal, agent, or joint venturer of, or for, other Defendants with respect to the acts, violations, and common course of conduct alleged by Plaintiff.

26.    Whenever this complaint refers to an act, deed or transaction of a corporation or entity, the complaint is alleging that the corporation or entity engaged in the act, deed or transaction by or through its officers, directors, agents, employees or representatives while they were actively engaged in the management, direction, control or transaction of the corporation or entity's business or affairs.

## IV.   JURISDICTION AND VENUE

27.   Plaintiff brings this action pursuant to Sections 4 and 16 of the Clayton Act,

15 U.S.C. §§ 15(a) and 26, to recover treble damages, equitable relief, costs of suit and

reasonable attorneys' fees for Defendants' violations of Section 1 of the Sherman Act, 15

U.S.C. § 1. Subject matter jurisdiction is proper pursuant to Section 4(a) of the Clayton Act,

15 U.S.C. § 15 (a), and 28 U.S.C. §§ 1331 and 1337, because the action arises under the laws

of the United States.

28.   Venue is proper in this judicial district pursuant to 15 U.S.C. §§ 15 and 22,

and 28 U.S.C. § 1391(b) and (c), in that at least one of the Defendants resides in this judicial

district, is licensed to do business or is doing business in this judicial district.

29.   This Court has personal jurisdiction over each Defendant because, *inter alia*,

each Defendant:  (a) transacted business throughout the United States, including in this

District; (b) sold Hotel Room Reservations throughout the United States, including in this

District; (c) had substantial contacts with the United States, including in this District; and/or

(d) was engaged in an illegal price-fixing conspiracy that was directed at and had the

intended effect of causing injury to persons residing in, located in, or doing business

throughout the United States, including in this District.

## V.   SUBSTANTIVE ALLEGATIONS

**A.   The Hotel Defendants Rely on the OTC Defendants for Substantial Bookings**

30.   Through the Internet, the OTC Defendants offer consumers hotel rooms in

many different hotels throughout the United States.  The OTC websites offer convenient

listings of available hotel rooms by city, allowing for easy consumer comparison of hotel

rates and locations rather than jumping from one hotel website to another. These OTC

Defendants offer their services to Hotel Defendants and consumers through two primary business models; the "Agency Model," and the "Merchant Model."

31.     Under the Agency Model, OTC's charge a "service fee" to hotel operators on a transaction basis for booking customers into rooms at a given hotel and the consumer pays the hotel for the room directly. Under the Agency Model, the hotels should be setting - and the OTC's should be requiring - a competitive price for Room Reservations to increase business and compete against other OTC's offering the same service. However, the Rack Rate is still utilized by all Defendants under this model.

32.     Beginning in and around the year 2000, the OTC's began the pervasive use of the Merchant Model. The Merchant Model is a uniform, nationwide model which operates the same for all OTC Defendants in all jurisdictions. Under this model, the OTC Defendants are the merchants of record and are paid directly by the consumer. The OTC Defendants negotiate with each Hotel Defendant for rooms on a net basis, paying the hotel a flat rate for each room sold. This model provides control to each OTC Defendant to set the room price to the consumer, thereby controlling its profit from the markup. However, all OTC Defendants still utilize the Rack Rate as the minimum price charged to the consumer.

33.     There is a "Wholesale Model," utilized by smaller price-cutting OTC's which obtain access to rooms through wholesalers. Wholesalers, or intermediaries between the OTC's and the hotels, work directly with Hotel Defendants to obtain last minute blocks of rooms that need to be filled. The wholesalers then make those rooms available to smaller OTC's at a wholesale rate. The OTC's then sell the rooms to consumers at higher retail rates, keeping the difference as profit. Under this Wholesale Model, the OTC's utilizing this should also be competing on price by increasing or decreasing the margin added to the

wholesale rates to set the retail rate to compete on price. However, smaller OTC's that attempt this are cut off form purchasing rooms by the Hotel Defendants.

34. The OTC Defendants have gained a dominant presence in the online sale of Room Reservations. The OTC Defendants have become increasingly important to the Hotel Defendants' business - generating as much as 50% of some of the Hotel Defendants' Room Reservation traffic. Thus, the Hotel Defendants require access to the OTC Defendants' distribution network.

**B. The OTC Defendants Use their Dominance in the Online Hotel Reservation Market to Impose the RPM Scheme on each Hotel Defendant to Prevent Discounting**

35. As a result of their dominance, and knowing that the Hotel Defendants cannot require access to their distribution network, the OTC Defendants devised an illegal anti-competitive RPM scheme to combat new or more efficient internet retailers, including those that obtained access to hotel rooms through the Wholesale Model, by exacting uniform agreements from the Hotel Defendants. These uniform agreements, upon penalty of termination and as a condition of doing business with the OTC Defendants, required that the Hotel Defendants ensure that competing online retailers refrain from discounting from the Rack Rate and that the Hotel Defendants charge no lower than the Rack Rates themselves.

36. While the OTC and Hotel Defendants have maintained that their negotiated rates are confidential, in fact the agreements negotiated between each OTC and Hotel Defendant contain Rate Parity and Most Favored Nation clauses and the various OTC Defendants actually have the same wholesale or net rate with the Hotel Defendants.[4] In

---

[4] Findings of Fact and Conclusions of Law, ¶13, *City of San Antonio, Texas, et al. v. Hotels.com, et al*, Civ. No. SA-06-CA-381-OG (W.P. Tex)(Doc. 1096), July 1, 2011.

addition, the OTC Defendants, while allowed to make their own markup or margin, attempt to maintain Rate Parity on the rate of the room itself.[5]

37.     In fact, the OTC-Hotel Defendants Agreements went beyond "attempts" and are and were part of an overall agreement to impose and enforce the RPM scheme.  For example, in 2004, multiple hotels, including Defendants Hilton and Kimpton, and OTC's, including Defendant Priceline, met together in Las Vegas for EyeforTravel's second annual Revenue Management and Pricing in Travel conferences.[6]  At the conference, Defendants Hilton, Kimpton and Priceline discussed "rate parity" and "pricing strategies."  In fact, Jimmy Shu, VP Revenue Management and Distribution at Kimpton led a presentation to "address the issues associated with adapting rate parity across all distribution channels .... " EyeforTravel has annually sponsored these conferences, and the attendees have expanded to include nearly all of the Defendants.[7]

38.     As part of the OTC-Hotel Defendants Agreements, the Hotel Defendants: required that competing OTCs agree to raise and maintain retail prices at the Rack Rate; threatened OTC's with legal action and/or refused to allow OTC's to sell Room Reservations if the Online Retailers refused to price fix and maintain resale prices at the Rack Rate; and in some instances, the Hotel Defendants required the wholesalers to stop providing rooms to price-cutting OTC's, such as Skoosh.com, if they refused to price fix and maintain resale prices at the Rack Rate.

---

[5] *Id.* at ¶ 14 and note 5.
[6] http://www.hotel-online.com/News/PR2004_2nd/May04_EyeForTravel.html (last accessed August 17, 2012).
[7] http://events.eyefortravel.com/travel-distribution-summit-north-america/past-attendees.php (last accessed August 17, 2012).

39.     Skoosh has publicly complained that it tried to sell discounted Room Reservations on its online travel site but was thwarted by the resale price maintenance scheme:

> 'We were openly discounting and hotels would email, call and threaten legal action,' Skoosh told the BBC.
>
> 'Either we'd have to raise prices or take the hotels off our list,' said Dorian Harris from Skoosh.[8]

40.     The OTC Defendants regularly police the OTC websites to make sure that the Hotel Defendants enforce Rate Parity.  When discrepancies are found, the Hotel Defendants are notified and they will normally foreclose the price-cutting OTC from selling their rooms unless they raise their prices to the Rack Rate of that Hotel Defendant.  The OTC-Hotel Defendant Agreements require such actions.

41.     For example, Defendant Sabre (which owns Defendant Travelocity) which has the Rate Assured Hotel Program requires the Hotel Defendants to enforce the RPM scheme:[9]

> For Suppliers
> Sabre Rate Assured™ Hotel Program
> Are you Rate Assured?
> Sabre Travel Network has already begun measuring properties to validate rate parity across properties prior to the official launch.  So make sure your properties are rate compliant!
>
> (b) If it is determined that a property is not providing rate parity in the program, it will essentially be placed on "Probation" status.
> (c) If a property is not providing rate parity in the subsequent measurement, Sabre will consider the hotel "In Violation" ...

42.     In fact, Sabre also runs a division called "Sabre Hospitality Solutions," which expressly markets and encourages hotels to adopt rate parity - in effect, the RPM scheme.

---

[8] http://www.bbc.co.uk/news/business-11330463 (last accessed August 5, 2012.
[9]   http://dorian.skoosh.com/open-letter-to-f-t-c--chairman_jon-leibowitz/ (last accessed August 16, 2012).

See, e.g., http://www.sabrehospitality.com/blog/2011-10-27/how-hotels-can-leverage-ota-relationships-without-killing-their-pricing-strategy;

http://www.sabrehospitality.com/blog/2011-11-30/three-top-trends- in- hospitality-marketing-and distribution-to-consider- when-planning - for- 2012.

43.      Defendant Hilton required Skoosh's wholesale supplier in the United States, AlliedTPro, to entirely cut off its contract with Skoosh as a result of Skoosh' s discounting and Defendant Hilton's enforcement of its Agreement with the OTC Defendants. AlliedTPro wrote to Skoosh: "Trust me I would welcome the additional business but cannot risk our contracts with Hilton."[10]

44.      Defendant Trump expressly admitted it was enforcing the OTC-Hotel Agreements, emailing Skoosh that: "if we do not maintain parity with all, we are threatened with poor placement on sites and worst case ... removal of hotel from sales sites.... Expedia threatens if Travelocity gets lower rate and vice-versa.  It is a vicious cycle if we get out of parity."[11]

45.      Defendant Intercontinental wrote to Skoosh "demanding that it follow Rate Parity or Skoosh would be cut off.

46.      In 2003, Defendant Marriott announced "a sweeping overhaul of its transient pricing, bringing parity to all Marriott distribution channels - offline and online."[12]  During the Class Period, Marriott was among the Hotel Defendants threatening Skoosh.com with

---

[10]   http://dorian.skoosh.com/open-letter-to-f-t-c--chairman jon-leibowitz/ (last accessed August 15, 2012).
[11]  http://dorian.skoosh.com/open-letter-to-william-baer-arnold-porter-11p/(referring to Holiday Inn New York) (last accessed August 16, 2012).
[12]  http://www.businesstravelnews.com/More-News/Marriott-Revamps-Pricing--Offers-Complete-Parity,-Curtails-Fixed-Consortia-Rates/?a-btn (Last accessed August 17, 2012).

13

legal action and/or the withdrawal of their Room Reservations if Skoosh.com did not maintain Rate Parity.

47.     Defendant Starwood also enforces the RPM scheme. "In one email to a hotel discounter, an executive at Starwood, which runs Le Meridien, Westin, W and Sheraton hotels, said: 'Should a wholesaler decide to sell the rooms on a room only basis, he has to make sure that the per contract agreed minimum mark-up is guaranteed.' The employee said the 'violation' of Starwood's Best Rate Guarantee was 'really serious' and the breach was reported to the Brussels headquarters. [13]

48.     Similarly, Kayak.com, which is a price comparison website, told Skoosh on several occasions that it had to "play the Orbitz game,"[14] i. e. maintain Rate Parity, or Kayak would no longer publish Skoosh's prices.  Kayak apparently felt pressured to enforce Rate Parity on behalf of the OTC Defendants because, for example, Orbitz accounted for 18.8% of Kayak's total revenues and Expedia and its affiliates accounted for 24.9% of Kayak's total revenues for the nine months ended September 30, 2010.[15]  After Skoosh reported the RPM scheme to governmental authorities, Kayak stopped publishing Skoosh's prices on its price comparison site.

49.     Each of these actions was taken directly because of the pressure the OTC Defendants were placing on Hotel Defendants to protect the OTC Defendants' margins by enforcing the RPM scheme.  The Hotel Defendants enforced the RPM scheme because they feared losing access to the OTC Defendants' websites

---

[13] http://www.telegraph.co.uk/finance/newsbysector/retailandconsumer/8467755/Hotels-face-inquiry-in-price-fixing-scandal.html (last accessed August 17, 2012).
[14] http://dorian.skoosh.com/open-letter-to-steve-hafner-c-e-o-kayak-com/ (last accessed August 17, 2012).
[15] http://www.businessinsider.com/kayak-ipo-2010-11 (last accessed August 17, 2012).

50.    Blink Booking, a mobile-only hotel booking service, echoed the claims of competing online retailers, saying: "We've long believed that the big online travel agents have been guilty of denying consumers the best prices - and that hotels' hands are tied by price parity agreements.  The online travel market may appear to offer plenty of choice and competition, but the reality is that there are lots of different shop windows selling the same rooms at the same prices - with those prices agreed through parity deals between the big groups and the big OTAs [online travel agents]."[16]

51.    The Hotel Defendants knew that the OTC Defendants would enforce the Agreements or refuse to sell the Hotel Defendants' rooms.  For example, in 2009, Defendant Expedia refused to list or sell Room Reservations from Choice Hotels.  Expedia' s CEO and President Dara Khosrowshahi explained:

> ' ... As far as the discussions that we've had with Choice, we are not doing business with Choice right now on a chain basis.  We don't have a vast majority of Choice hotels on our side ...'

> ." . . he added, 'First of all, our primary goal is to have the broadest, deepest set and highest quality set of inventory for the benefit of our customers.  And this doesn't signal any kind of change in our overall philosophy as far as how we work with our hotel partners and what we're looking at.  It's not really an issue of economics; it's more than [sic] issue of our wanting rate parity and inventory parity for our customers."

> 'When our customers come to Expedia, we want them to know that they're getting the best prices and certainly, we are insistent on that.  And to the extent that Choice doesn't want to work under those terms.[sic]  We won't be doing business with each other.  Those are the terms that we work with our others [sic] strategic partners, they're comfortable where they were comfortable with it. [sic]  So, its nothing usual from what I

---

[16]http://www.telegraph.co.uk/finance/newsbysector/retailandconsumer/leisure/9441235/OFT-alleges-Intercontinental-Hotels-online-deals-broke-competition-law-html (last accessed August 16, 2012).

would say is typical practice for us in most of our other OTA competitors so to speak.'[17]

52.     The OTC Defendants sought and obtained the agreement of the Hotel Defendants to impose and enforce "Rate Parity," which was a restraint on price competition for the OTC Defendants' benefit and not for any legitimate pro-competitive reason.

**C.     The RPM Scheme Has Established the Rack Rate as the Price-Fixed Rate for the OTC and Hotel Defendants**

53.     As a result of the RPM Scheme, effectuated through the Agreements between the OTC and Hotel Defendants, the online sales of Hotel Defendants' rooms are at the Rack Rate.

54.     In the class certification Order (18-19) of the previously noted *City of San Antonio, et al. v. Hotels.com, et al.*, No. SA-06-CA-381-OG (W.D. Tex.), the cited deposition testimony delineates virtually identical business practices of the OTC Defendants with respect to their contracts with the Hotel Defendants, their uniform calculations of margins and sell rates.

55.     In the *City of San Antonio* case, the Court determined, based upon deposition testimony, that the margins of each of the OTC Defendants were identical to the other OTC Defendants.  It found almost without exception, the net rate and sell rate for a given room on a given day are the same among the OTC Defendants because the agreements with the Hotel Defendants all contain "parity" or "Most Favored Nation" ("MFN") clauses.  This also makes the [OTC] margins the same. Id. at 20, n21 (citations to deposition testimony omitted).

56.     Due to the MFN clauses utilized by all of the OTC Defendants in their agreements with each Hotel Defendant, Rate Parity is guaranteed.  Therefore, anyone

---

[17]   http://www.eyefortravel.com/distribution-strategies/expedia-stresses-rate-parity-and-inventory-parity-its-customers (last accessed September 11, 2012.

accessing any Hotel Defendant website and any OTC Defendant website for the same room, on the same date, at the same hotel will find across-the-board identical minimum rates.  The only occasional variation will be a *higher* rate posted by one of the OTC Defendants.

57.     Any Hotel Defendant seeking to draw in Reservations by offering lower prices or extra points for rewards programs have been met with demands by the OTC Defendants to stop competing with them and to adhere to the RPM Rack Rate Agreements.

58.     As a result of the "success" of the RPM scheme, the OTC Defendants are confident that all of the prices listed between them for the same room will be identical.  Thus, they each offer a near identical "best price" guarantee - knowing it is the only price available even among competitors.

59.     The RPM Agreements, and the scheme in restraint of trade, have harmed competition in the relevant market(s) and caused prices to be higher in the relevant market( s) than the prices would have been without the Agreements.

60.     The uniform adoption and enforcement of Rate Parity and Most Favored Nation Clauses by the OTC Defendants was not the result of independent business judgments but the result of a horizontal *per se* price fixing agreement.

61.     The RPM Agreements were specifically intended to protect the OTC Defendants from price competition from other highly efficient OTC retailers offering the same inventory, and to protect them from competition by the Hotel Defendants.  The Hotel Defendants entered into and enforced the RPM Agreements to maintain their favorable listings on the OTC Defendants' websites.  Thus, all Defendants agreed to restrain competition by mandating higher price levels, cutting off price competition, and punishing

any price cutters.  This scheme substantially inflated prices to consumers like the Plaintiff
and the Class.

62.     The British Office of Fair Trade ("OFT") recently issued a "Statement of
Objections" alleging that Expedia, Inc. infringed competition through the very same price
fixing agreements alleged here with respect to British hotel rooms.  The Telegraph reported
that Expedia admitted that "it has engaged in cartel conduct on breach of the law," and is
"providing information on its rivals under a 'leniency deal'" with the British authorities.

## VI.     MONOPOLY/MARKET POWER

63.     The relevant product market in this case is direct online retail sales of Room
Reservations.

64.     The relevant geographic market in this case is the United States and/or the
State of California.

65.     By virtue of their power to control prices and exclude competition in the
relevant market(s), the OTC Defendants at all relevant times possessed monopoly and/or
controlling market power in the relevant market(s).  The OTC Defendants and their
subsidiaries hold over a 50 percent market share in the internet travel business market.  Just
Expedia and its subsidiaries alone account for approximately 50% of the internet travel
business market.  Moreover the OTC Defendants possess a dominant share of the market(s)
for online retail sales of Room Reservations.

## VII.    ANTITRUST INJURY AND MARKET EFFECTS DUE TO
##         DEFENDANTS' ANTICOMPETITIVE CONDUCT

66.     The overall effect of Defendants' RPM scheme has been to substantially
foreclose and impair competition (and the threat of such competition) from lower-priced

Room Reservations. As alleged above, had the Defendants not improperly foreclosed or stifled actual or potential competitors from competing in the market for Room Reservations, other actual or potential rival online retailers would have achieved much greater sales than they actually did (or threatened to do), given the lower prices that they charged (or could have charged upon entry), and would have posed a far greater competitive threat to the Defendants. Additionally, absent the Defendants' exclusionary conduct, barriers to entry to the market would have been lower, which: (a) would have made it easier for existing or new competitors to enter or expand their positions in the market for Room Reservations, and (b) would have caused existing or potential competitors to be attracted to the Room Reservation market because of the supracompetitive prices that the Defendants were charging. As a result, absent the Defendants' misconduct, the Defendants would have rationally perceived that there was a greater threat of potential competition in the relevant market if the Defendants did not reduce their supra-competitive prices.

67.     The presence of unfettered competition from actual or potential competitors, which were selling lower-priced Room Reservations, would have forced the Defendants to lower the prices for their Room Reservations in order to remain competitive and/or to counter a perceived threat of additional entry.

68.     During the relevant period, Plaintiff and the other members of the Class purchased Room Reservations directly from the Defendants. As a result of the Defendants' alleged illegal conduct, members of the Class were compelled to pay, and did pay, artificially inflated prices for the Room Reservations they purchased. Plaintiff would have been able to, *inter alia*, purchase less-expensive Room Reservations had potential competitors been able to engage in unfettered competition. The prices that Plaintiff and the other Class members paid

for Room Reservations during the Class Period were substantially greater than the prices that

Plaintiff and the Class members would have paid absent the illegal conduct alleged herein

because: (1) the prices of all Room Reservations were artificially inflated by the Defendants'

illegal conduct; and (2) Class members were deprived of the opportunity to purchase Room

Reservations from the Defendants' competitors at substantially lower prices.  Thus, Plaintiff

and the Class have, as a consequence, sustained substantial damages in the form of

overcharges.

## VIII.   CLASS ALLEGATIONS

69.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings

this class action on behalf of herself and all members of the following class (the "Class"):

> All persons and entities throughout the United States who paid
> for a room at a Defendant Hotel reserved through the OTC
> Defendants from January 1, 2000 through the present.
> Expressly excluded are (i) room reservations made as part of a
> package deal; or (ii) room reservations made without disclosure
> of the name of the hotel until after paying for the room
> reservation.

70.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings

this class action on behalf of herself and all members of the following subclass (the

"California Class"):

> All persons and entities who paid for a room at a Defendant
> Hotel located in California and reserved through the OTC
> Defendants from January 1, 2000 through the present.
> Expressly excluded are (i) room reservations made as part of a
> package deal; or (ii) room reservations made without disclosure
> of the name of the hotel until after paying for the room
> reservation.

71. Plaintiff believes that the Class and California Class include thousands of consumers and businesses across the United States, though the exact number and the identities of the Class members are currently unknown.

72. The members of the Class and California Class are so numerous that joinder of all Class members is impracticable.

73. Common questions of law and fact exist as to all members of the Class and California Class and predominate over any questions affecting solely individual members of the Class and California Class. Nearly all factual, legal, and statutory relief issues raised in this Complaint are common to each of the members of the Class and California Class and will apply uniformly to every member of the Class and California Class. Among the questions of law and fact common to the Class and California Class members are:

a. whether Defendants engaged in agreements, contracts, combinations, and conspiracies, which had the purpose and/or effect of unreasonably restraining competition and limiting purchaser access to competing and lower-priced Room Reservations;

b. whether Defendants unreasonably restrained trade;

c. whether Defendants' anti-competitive contracts, combinations, and conspiracies have caused Plaintiff and the other members of the Class and California Class to suffer antitrust injury in the nature of overcharges;

d. whether Defendants' unlawful conduct caused Plaintiff and other Class and California Class members to pay more for the Room Reservations than they otherwise would have paid;

e. the appropriate Class-wide measure of damages;

       f.       whether, and in what amount, Plaintiff and the other Class and California Class members are entitled to recover treble damages, court costs, and attorneys'' fees;

       g.      whether Defendants' anti-competitive conduct is continuing, thus entitling the Class and California Class to injunctive relief to promote unrestrained trade and free and fair competition.

       74.     Plaintiffs' claims are typical of the claims of other members of the Class and California Class because Plaintiff and every member of the Class and California Class have suffered similar injuries as a result of the same practices alleged herein.  Plaintiff has no interest adverse to the interests of the other members of the Class and California Class.

       75.     Plaintiff will fairly and adequately represent and protect the interests of the Class and California Class. Plaintiff has retained able counsel with extensive experience in class action litigation. The interests of the Plaintiff are coincident with, and not antagonistic to, the interests of the other Class and California Class members.

       76.     The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

       77.     Plaintiff and other members of the Class have suffered damages as a result of Defendants' unlawful and wrongful conduct.  Absent a class action, Defendants will retain substantial funds received as a result of their wrongdoing, and such unlawful and improper conduct shall, in large measure, go unremedied. Absent a class action, the members of the Class will not be able to effectively litigate these claims and will suffer further losses, as Defendants will be allowed to continue such conduct with impunity and retain the proceeds of their ill-gotten gains.

78.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all Class members is impracticable. Moreover, because the damages suffered by individual members of the Class are relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  The Class is readily definable, and prosecution of this action as a class action will eliminate the possibility of repetitious litigation.  There will be no difficulty in the management of this action as a class action.

IX.     **TOLLING OF THE STATUTE OF LIMITATIONS, FRAUDULENT CONCEALMENT, EQUITABLE TOLLING AND CONTINUING VIOLATIONS**

79.     Plaintiff repeats and realleges each of the foregoing allegations as if fully set forth herein.

80.     Plaintiff did not discover and could not have discovered through the exercise of reasonable diligence the existence of the claims sued upon herein until immediately prior to commencing this civil action.

81.     Any applicable statutes of limitation have been tolled by Defendants' affirmative acts of fraudulent concealment and continuing misrepresentations, as the facts alleged above reveal, and *inter alia*, as follows:

    a.     the OTC Defendants have testified in the *City of San Antonio* case that. there is only an "industry average" in order to stay competitive;

    b.     the OTC Defendants have testified in the *City of San Antonio* case that hotels do not know the OTC Defendants' markups and, therefore, the        hotels do not know the price actually paid by the consumer – this is manifestly untrue given the RPM Rack Rate Agreements;

c.      the OTC Defendants have testified in the *City of San Antonio* case that the margin charged by the OTC Defendants is within their discretion – this is manifestly untrue given the RPM Rack Rate Agreements.

d.      the OTC Defendants have testified in the *City of Antonio* case that the Merchant Model was described as a "facilitation fee" to cloak their markups – further hiding the true purpose and effect of the RPM Rack Rate Agreements.

82.    Because of the self concealing nature of Defendants' actions and their affirmative acts of concealment, Plaintiff and the Class assert the tolling of any applicable statutes of limitations affecting the claims raised herein.

83.    Defendants continue to engage in their deceptive practices, and consequently, unwary consumers are injured on a daily basis by Defendants' unlawful conduct.  Therefore, Plaintiff and the Class submit that each instance that Defendants engaged in the conduct complained of herein and each instance that a member of the Class purchased a Room Reservation constitutes part of a continuing violation and operates to toll the statutes of limitation in this action.

84.    Defendants are estopped from relying on any statute of limitations defense because of their unfair or deceptive conduct.

85.    Defendants' conduct was and is, by its nature, self-concealing.  Still, Defendants, through a series of affirmative acts or omissions, suppressed the dissemination of truthful information regarding their illegal conduct, and have actively foreclosed Plaintiff and the Class from learning of their illegal, anti-competitive, unfair and/or deceptive acts.

86.     By reason of the foregoing, the claims of Plaintiff and the Class are timely under any applicable statute of limitations, pursuant to the discovery rule, the equitable tolling doctrine, and fraudulent concealment.

## X.     COUNTS

### COUNT I

### VIOLATION OF 15 U.S.C. § 1
### (AGREEMENTS UNREASONABLY RESTRAINING TRADE AGAINST ALL DEFENDANTS)

87.     Plaintiff hereby incorporates each preceding and succeeding paragraph as though fully set forth herein.

88.     The Agreements, and their enforcement, constitute contracts, combinations and conspiracies that substantially, unreasonably, and unduly restrain trade in the relevant market(s), and harmed Plaintiff and the Class thereby.

89.     The Agreements cover a sufficiently substantial percentage of relevant market(s) to harm competition.

90.     The Defendants are liable for the creation, maintenance, and enforcement of the Agreements under a per se, "quick look" and/or rule of reason standard.

91.     The Defendants possess market power.

92.     The Agreements harm competition by artificially raising and stabilizing prices.

93.     There is no legitimate, pro-competitive business justification for the Agreements or any of them that outweighs their harmful effect.  Even if there were some conceivable justification, the Agreements are broader than necessary to achieve such a purpose.

94.     Plaintiff and members of the Class were injured in their business or property by the collusion and conspiracy alleged above which facilitated, enabled, assisted or furthered Defendants' substantial foreclosure and exclusion of competition in the relevant market(s).

95.     Without limiting the generality of the foregoing, Plaintiff and the other members of the Class have been forced to pay higher prices for Room Reservations than they would have paid in the absence of Defendants' unlawful conduct.

## COUNT II

### VIOLATION OF 15 U.S.C. §1
### (HORIZONTAL PER SE AGREEMENT – AGAINST OTC DEFENDANTS)

96.     Plaintiff hereby incorporates each preceding and succeeding paragraph as though full set forth herein.

97.     The OTC Defendants and their unnamed co-conspirators entered into and engaged in a conspiracy in unreasonable restraint of trade in violation of Section 1 of the Sherman Act and Section 4 of the Clayton Act.

98.     The conspiracy consisted of a continuing agreement, understanding and/or concerted action between and among the OTC Defendants and their unnamed co-conspirators to fix, maintain and/or stabilize prices for online Hotel Room Reservations. Defendants' conspiracy is a *per se* violation of the federal antitrust laws and is, in any event, an unreasonable and unlawful restraint of trade.

99.     The OTC Defendants' conspiracy, and the resulting impact on the market for Online Hotel Room Reservations, occurred in and/or affected interstate commerce.

100.    As a proximate result of the OTC Defendants' unlawful conduct, Plaintiff and the Class have suffered injury in that they have paid supra-competitive prices for Online Hotel Room Reservations during the Class Period.

## COUNT III

### VIOLATION OF THE CARTWRIGHT ACT
### (CALIFORNIA BUSINESS & PROFESSIONS CODE SECTIONS 16720, et seq.)
### (CALIFORNIA CLASS ONLY AGAINST ALL DEFENDANTS)

101.    Plaintiff hereby incorporates each preceding and succeeding paragraph as though fully set forth herein.

102.    Defendants engaged in price-fixing and a per se violation of the Cartwright Act.

## COUNT IV

### (VIOLATIONS OF CAL. BUS. & PROF. CODE § 17500 et seq. AGAINST OTC DEFENDANTS)

103.    Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs set forth above.

104.    The OTC Defendants' use of various forms of advertising media to advertise, call attention to or give publicity to the sale of their goods and services as "best prices" and other practices, as set forth above, which are not as advertised or as otherwise represented, constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, under Business & Professions Code Section 17500 et seq. These advertisements and practices have deceived, and are likely to deceive, the consuming public, in violation of those sections.

105.    The OTC Defendants' business acts and practices, as alleged herein, have caused injury to the Plaintiff and the Class who would not have paid as much for online rooms had they known the truth.

106.   Plaintiff and the Class are entitled to restitution and/or other equitable relief in light of the practices described herein.

107.   The OTC Defendants' practices in connection with the marketing and sale of online rooms violate the CLRA in at least the following respects:

a.   In violation of Section 1770(a)(5), the OTC Defendants knowingly misrepresented the character, uses and benefits of the rooms;

b.   In violation of Section 1770(a)(9), the OTC Defendants have knowingly advertised the online rooms with the intent not to sell them as advertised; and

c.   In violation of Section 1770(14), the OTC Defendants knowingly misrepresented the legal rights, obligations, or remedies involved in the purchase and sale of online rooms,

108.   The OTC Defendants' misrepresentations, failure to disclose, and knowing concealment of the prices for online rooms are misrepresentations, omissions, and concealments of material fact that constitute unfair and/or deceptive business practices in violation of Civil Code Section 1770(a) and caused harm to Plaintiff and Class members who would not have purchased and/or paid as much for their rooms had they known the truth.

109.   In accordance with Civil Code § 1780 (a), Plaintiff and members of the Class seek injunctive and equitable relief for violations of the CLRA.  In addition, after mailing appropriate notice and demand in accordance with Civil Code § 1782(a) & (d), Plaintiff will subsequently amend this Class Action Complaint to also include a request for damages. Plaintiff and members of the class request that this Court enter such orders or judgments as may be necessary to restore to any person in interest any money which may have been

acquired by means of such unfair business practices, and for such other relief, including attorneys' fees and costs, as provided in Civil Code § 1780 and the Prayer for Relief.

**COUNT V**

**(VIOLATIONS OF CAL. BUS. & PROF. CODE § 17200 et. seq.
AGAINST OTC DEFENDANTS)**

110.     Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs set forth above.

111.     The OTC Defendants have engaged in unfair competition within the meaning of California Business & Professions Code Section 17200 et seq. because the OTC Defendants' conduct is unlawful, misleading, and unfair as herein alleged.

112.     The OTC Defendants' business practices are unlawful because they violate the CLRA, as well as other statutes alleged herein.

113.     The practices are misleading because they were likely to deceive consumers into believing that they are obtaining the "best price" or a "low price" for their hotel room.

114.     The OTC Defendants' business practices, and each of them, are unfair because they offend established public policy and/or are immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers, which harm greatly outweighs any benefit associated with the business practice, in that consumers are led to believe that the rooms they were paying for had qualities that it did not.

115.     Plaintiff and the Class have standing to pursue this claim because they have been injured by virtue of suffering a loss of money and/or property as a result of the wrongful conduct alleged herein.  Plaintiff and the Class would not have purchased their hotel rooms or paid as much for them had they known the truth.

116.    Plaintiff and the Class are entitled to relief, including full restitution and/or restitutionary disgorgement, to the greatest extent permitted by law, which may have been obtained by the OTC Defendants as a result of such business acts or practices, and enjoining the OTC Defendants to cease and desist from engaging in the practices described herein.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff, on her behalf and on behalf of the Class, prays for judgment, as follows:

A.    For an Order certifying this case as a class action against Defendants and appointing Plaintiff as Representative of the Class;

B.    For money damages against Defendants and in favor of Plaintiff and the Class on all claims asserted in tins Complaint;

C.    For costs of suit incurred herein;

D.    For prejudgment interest to the extent allowed by law;

E.    For penalties as allowed by law;

F.    For permanent injunctive relief to enjoin further violations of the law; and

G.    For such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all issues triable of right by jury.

Dated: September 21, 2012          By: _____ (EAS4988)
                                        Eugene A. Spector
                                        Jeffrey J. Corrigan
                                        Jay S. Cohen
                                        **SPECTOR ROSEMAN
                                        KODROFF & WILLIS, P.C.**
                                        1818 Market Street – Suite 2500
                                        Philadelphia, PA   19103
                                        Telephone:  (215) 496-0300
                                        Facsimile:   (215) 496-6611
                                        Email:  espector@srkw-law.com
                                                   jcorrigan@srkw-law.com
                                                   jcohen@srkw-law.com